

**BY ORDER OF THE COURT**

**WARNING: THIS DOCUMENT FILED UNDER SEAL PURSUANT TO CRIMINAL RULE 32(j)**

RICHARD H.S. SING     #6416
Law Office of Richard H.S. Sing
Davies Pacific Center
841 Bishop Street, Suite 410
Honolulu, HI  96813
T: (808) 537-1529
F:  (808) 523-9137
E-Mail: ricksing@hicriminallaw.com
Attorney for Defendant
JAMIE KALANI ENGLISH

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII     cc
Jun 27, 2022, 1:46 pm
Pam Hartman Beyer, Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JAMIE KALANI ENGLISH, )<br>)<br>Defendant. )<br>)<br>)<br>)<br>)<br>) | CR No.     22-00012SOM-01<br><br>DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANT SENTENCE; DECLARATION OF COUNSEL; EXHIBIT A; CERTIFICATE OF SERVICE<br><br>JUDGE: HON. SUSAN MOLLWAY<br><br>SENTENCING HEARING: JULY 5, 2020, AT 1:30 p.m. |

**DEFENDANT JAMIE KALANI ENGLISH'S SENTENCING MEMORANDUM AND MOTION FOR VARIANT SENTENCE**

NOW COMES Defendant, JAMIE KALANI ENGLISH, by and through undersigned counsel, and hereby respectfully submits his Sentencing Memorandum and Motion for Variant Sentence pursuant to 18 U.S.C. §3553(a).

## I. INTRODUCTION

This matter arises from a single count violation of 18 U.S.C. Sections 1343 and 1346 (Honest Services Wire Fraud). At all relevant times to this charge, the defendant in this matter, Mr. Jamie Kalani English ("Mr. English") was an elected member of the State of Hawaii Senate, a resident of the State of Hawaii, and a United States Citizen.

Mr. English accepted a series of payments and benefits from Person A[1], the owner of a multiple Hawaii based businesses, in exchange for legislative support that would benefit Person A's company. Further, Mr. English did not disclose these payments or benefits to the State of Hawaii via his State Ethics Commission yearly disclosures.

Sentencing is set for July 5, 2022. The defense requests that this court grant Mr. English a downward variance from the 37-month sentence recommended by U.S. Probation in this matter (See #14 at Page 28) to a period of 30 months.

---

[1] Person A has not been identified by the government but has been ostensibly identified by numerous news sources.

## II. CASE HISTORY

In 2019, Mr. English and Person A began communicating about cesspools. In exchange for support of legislation that would support Person A's business, Mr. English accepted benefits (cash and hotel rooms) from Person A totaling $18,305. This individual had apparently been cooperating with law enforcement and Mr. English was arrested on January 14, 2021. While in custody, and in the months that followed, Mr. English admitted his conduct and was open and honest with the government about his interactions with Person A.

On February 15, 2022, Mr. English waived indictment and, pursuant to the Memorandum of Plea Agreement (Document #8), entered a plea of guilty to the single count. Mr. English cooperated with the preparation of the Pre-Sentence Report and sentencing is set for July 5, 2022.

## III. THE PLEA AGREEMENT

Mr. English, pursuant to the Memorandum of Plea Agreement, has waived indictment and plead guilty to a single count of 18 U.S. C. 1343 and 1346 (Honest Services Wire Fraud). The Government has agreed to not charge Mr. English with any additional charges relating to his conduct in this matter. Mr. English has agreed to pay a forfeiture amount of $15,305.00.[2] He has also agreed to extensive

---

[2] The PSR correctly points out that forfeiture amount should properly be $13,305, as the total benefit amount was $18,305.00, and law enforcement recovered $5,000. The $15,305.00 figure may be because of a mathematical error.

3

factual stipulations and limits on his appellate rights.

### A. <u>Offense Conduct</u>

This case originates with Person A being involved in a separate public corruption and financial fraud matter, and these activities being brought to the attention of the Federal Bureau of Investigation ("FBI"). Person A began cooperating with the FBI in this investigation against Hawaii politicians (See Document #14 at 5-6). Over the course of this cooperation, Person A provided Mr. English with payments and benefits totaling approximately $18,305.00, in exchange for his support of Person A's business interests at the Hawaii Legislature.

Mr. English agreed to support legislation and to "kill" legislation that Person A was interested in. He also provided a draft report of the Cesspool Conversion Working Group to Person A at his request.

Mr. English, as a Hawaii Senator, was required to submit an annual gift disclosure statement. Mr. English did file as required, but the filings for the relevant years did not include any of the payments, benefits, or gifts from Person A (See generally Document #8 at 4-23).

At the time of his arrest in January of 2021, Mr. English admitted his conduct and accepted responsibility for his actions. As other matters related to Person A progressed, Mr. English took no further actions and retired from public service in April of 2021.

### B. Sentencing Stipulations

No specific agreement exists as to the sentencing guidelines. However, Mr. English has no objections as to the calculations contained in the PSR.

Based on Mr. English's quick acceptance of responsibility and open and honest discussions with the Government, we contemplate a 3-point reduction to the offense level based on his post offense conduct and his early acceptance of responsibility.

## IV. POST-BOOKER SENTENCING CONSIDERATIONS

Mr. English is asking this court to grant his Motion for Variant Sentence and to impose a reasonable and individualized sentence outside the guideline range in this matter.

### A. Post-Booker Considerations

In Booker, the Supreme Court made the United States Sentencing Guidelines advisory in determining an appropriate federal sentence. In the cases following Booker -- Rita, Kimbrough, Gall, and also in Cunningham v. California, 549 U.S. 270 (2007), the Court gave substantive and procedural content to its Booker remedy, making clear that § 3553(a) is the controlling sentencing law and rejecting devices that were used after Booker to maintain a *de facto* mandatory Guidelines system.

These cases restored the District Court's ability to impose a sentence

tailored to the individual circumstances of the case, and the defendant, by requiring it to consider factors other than the sentencing range imposed by the United States Sentencing Guidelines. <u>Kimbrough</u>, 552 U.S. at 101. Indeed, under §3553(a), courts are <u>required</u> to sentence below the Guidelines range if such a sentence would be sufficient to achieve the purposes of punishment. 18 U.S.C. § 3553(a).

In 2009, the Supreme Court reasserted that "the Guidelines are not only *not mandatory* on sentencing courts" but, also, that they "do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. <u>Nelson</u> <u>v. United States</u>, 555 U.S. 350, 352 (2009) (citing <u>Rita</u> and <u>Gall</u>) (emphasis in original).

### B. <u>18 U.S.C. §3553(a) Factors</u>

When considering the § 3553(a) factors, the Guidelines continue to be important, but are neither presumptively controlling, nor *per se* reasonable. <u>Nelson</u>, 129 S. Ct. at 892; <u>United States v. Jiminez-Beltre</u>, 440 F.3d 514 (1st Cir. 2006). The <u>Booker</u> sentencing scheme permits courts to impose non- Guideline sentences that override the Guidelines, subject to the "ultimate requirement of reasonableness." <u>Jimenez-Beltre</u>, 440 F.3d. at 518.

Perhaps even more importantly, however, is that this line of cases establishes a new, independent limit on the sentence that may be imposed. The

primary sentencing mandate of §3553(a) states that courts must impose the minimally sufficient sentence to achieve the statutory purposes of punishment-- justice, deterrence, incapacitation, and rehabilitation:

> The court shall impose a sentence <u>sufficient, but not greater than necessary</u>, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

18 U.S.C. § 3553(a)(emphasis added).

This so-called "parsimony provision" is not simply a factor to be considered in determining a sentence; it represents a cap above which the court is <u>statutorily prohibited</u> from sentencing -- even when a greater sentence is recommended by the Sentencing Guidelines. <u>See</u>, <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3rd Cir. 1989) (Becker, J., concurring in part, dissenting in part).

<u>Gall</u> reinforced and further clarified the ruling in <u>Booker</u>. In <u>Booker</u>'s aftermath, Courts of Appeal rejected numerous below-Guideline sentences as "unreasonable" simply because they did not believe that the mitigating circumstances upon which the district courts relied were significant enough to support large "variances" from the bottom of the Guidelines range. In <u>Gall</u>, the Court "reject[ed] an appellate rule that requires 'extraordinary circumstances to justify a sentence outside the Guidelines range." 128 S.Ct. at 597-98. The Court also made it clear that Courts of Appeal are not to impose

7

their own judgments on what appropriate sentences should be in particular cases. If the record demonstrates that the district court considered the § 3553(a) factors and based its sentence on a rationale supported by the record, the sentence should stand under the deferential abuse of discretion standard on appeal. Id. at 591.

The Court's decision in Kimbrough extended the foundation laid in Booker even further than its decision in Gall that "as a general matter, courts may vary [from the Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines." 28 S. Ct. at 570. Its decision was rooted in the observation that the crack/powder ratio in the drug guidelines, which was under consideration in Kimbrough, did not "exemplify the [Sentencing] Commission's exercise of its characteristic institutional role" because it had not taken account of empirical data and national experience in formulating that ratio. 128 S. Ct. at 575. As a result, it ruled that similarly deficient Sentencing Guidelines and policy statements warrant less deference than Guidelines based upon careful study and supporting data. Id.

In Rodriquez, the First Circuit summarized the process that a district court should undertake in evaluating a request for a variant sentence under Kimbrough:

> In the final analysis, then, the gloss supplied by Kimbrough signifies that a district court should not

8

> evaluate a request for a variant sentence piecemeal, examining each section 3553(a) factor in isolation, but should instead consider all the relevant factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing. This inquiry should be guided by, but not made unflinchingly subservient to, the concerns expressed in the statute's various sub-parts.

527 F.3d at 227.

It is respectfully submitted that the principles embodied in <u>Gall</u>, <u>Kimbrough</u>, <u>Martin</u>, and <u>Rodriguez</u> provide Your Honor with sufficient discretion to fashion the individualized Non- Guideline, variant sentence that we are recommending in this case.

### V. 18 USC §3553(a) Sentencing Factors

The prescribed sentencing factors, when taken as a whole, warrant a downward variation from the recommended guidelines.

#### A. Mr. English's History and Characteristics – 18 U.S.C. 3553(a)(1)

Mr. English's biological mother passed away from cancer when he was 10 years old. As he had never met his biological father, he was hanai to his maternal grandparents, who raised him in the close and tight knit community of Hana, Maui. While not wealthy in material things, his life was rich with Hawaiian culture, a loving and extended family, and the benefits of a close rural community. Mr. English benefited from, and is grateful for, his loving and supportive childhood.

9

Mr. English attended Kamehameha Schools as a boarding student, graduating in 1984. He went on to obtain a Bachelor of Arts degree from Hawaii Loa College (now Hawaii Pacific University), and then went on to obtain a Master of Arts degree in Pacific Studies from the University of Hawaii at Manoa. Mr. English always worked hard and excelled in academics. In addition to his formal education, Mr. English speaks English, Hawaiian, Tahitian, and Mandarin Chinese.

Mr. English, now age 55, has been a working and productive member of society his entire adult life. Following his formal education, Mr. English entered public service through election to the Maui County Counsel, where he served 2 terms representing the Hana Area. In 2000, Mr. English was elected to the 7th Senatorial District, representing the people of East and upcountry Maui, Molokai, Lanai, and Kahoolawe. He spent the next 20 years representing his constituents and working on many historic and essential projects.[3] At the time of his retirement in April of 2021, Mr. English served as the Senate Majority Leader.

Mr. English has cultivated relationships and support from the many

---

[3] Prior to the events of this case, Mr. English has had a long and distinguished career including drafting the current recycling legislation (the bottle bill), creating the Emergency Environmental Work Force, Hawaii Invasive Species Commission (including all the island invasive species committees), legalizing Indigenous Architecture (Hawaiian traditional structures), incorporating the use of Hawaiian language into state government (Judicial, Legislative and Executive branches), Harbors Modernization, Airports Modernization, Highways Modernization, Historic Highways and Bridges projects, Rural and neighbor Island infrastructure projects (Kalaupapa Airport, Hana Airport, Molokai Airport, Lanai Airport, Waimea Airport, Kalaupapa Harbor, Kaunakakai harbor, Kumalapau Harbor, Manele Harbor, Hana Highway, Kamehameha V Highway on Molokai, Ane Keohokalole Highway in Kona, Kaumualii Highway on Kauai, and developing the reservations system framework for Waianapanapa State Park. With over 20 years at the State legislature, Mr.English was responsible for bringing billions of state dollars to the district he represented and to projects all over Maui, Molokai, Lanai and Kahoolawe, ensuring our bridges and roads to Hana were safe, and ensuring schools in Maui County had the funds to complete important CIP initiatives.

individuals he has interacted with over his lifetime and career. Many of those who have known and witnessed his kindness, hard work, and dedication to his friends and constituents, continue to support him following his plea of guilty in this matter (See 25 letters of support attached as Exhibit "A"). The themes articulated in these letters are strikingly similar. Mr. English was a compassionate and dedicated advocate for the rural communities and individuals he represented, as well as a leader and advocate for the issues facing our native Hawaiian population and our pacific island neighbor states. For many years, Mr. English has represented his community and constituents in a compassionate, caring, and effective manner.

A history of a blameless life and a history of good character can warrant a downward variance. U.S. v. Autery, 555 F.3rd 864 (9th Cir. 2009).

In late November of 2020, Mr. English contracted COVID-19. He now suffers from long-haul COVID. These symptoms include sleep apnea, cognitive problems (memory loss and recall difficulty), lethargy, and significant breathing problems. He treats 2x per week and is prescribed 7 daily medications (See Document #14 at page 15). The symptoms associated with Long Haul Covid impact his daily life -from gardening to computer work. Mr. English's life has been forever altered by the ravages of Long Haul Covid-19.

His conduct during this case has forever stained Mr. English's career of good works. A career of public service can be recognized as forming a basis for a

downward variance. U.S. v. Libby, (Where Scooter Libby, convicted of perjury and obstruction of justice, receives 30- month guideline sentence, President Bush commutes prison time in part because conviction is "harsh" where "the reputation he gained through his years of public service and professional work in the legal community is forever damaged [and where] the consequences of his felony conviction on his former life as a lawyer, public servant and private citizen will be long-lasting.")(found at **http://www.washingtonpost.com/wp-dyn/content/article/2007/07/02/AR2007070201463.html?sub=new**) ;U.S. v. Lynne Stewart (S.D.N.Y. Oct. 16, 2006, No. 02-395))  (where D convicted of providing support to terrorists and where guidelines called for 30 year sentence, district court imposes sentence of 28 months in part because of defendant's life-long career as attorney devoted to defense of poor and the oppressed for little money); U.S. v. Carter 530 F.3d 565 (7th Cir. 2008)  ("The guidelines are one factor among those listed in 18 U.S.C. § 3553(a), and regardless of whether courts have previously recognized public service as a ground for departure from the Guidelines, sentencing courts are charged with considering as part of the § 3553(a) factors "the history and characteristics of the defendant," which would include a defendant's public service. § 3553(a)(1)).

    Mr. English is without prior conviction and without history of a criminal lifestyle.  A downward variance based on little or no criminal record, or for an

unblemished record for many years since prior conviction, can be warranted. U.S. v. Paul, 561 F.3rd 970 (9th Cir. 2009), U.S. v. Autery, 555 F.3rd 864 (9th Cir. 2009), U.S. v. Tomko, 562 F.3rd 558 (3rd Cir. 2008), U.S. v. Fuson (6th Cir. Feb 8, 2007), 2007 WL 414265 (unpub).

  B.  **Nature and Circumstances of Offense – 18 U.S. C. §3553(a)(1)**

This case began on an undetermined date within the last several years when Mr. English accepted unsolicited cash from Person A to purchase food and drink at a political gathering Mr. English was attending.

In 2019, Mr. English agreed to assist Person A in his interest with legislation surrounding cesspools in the State of Hawaii. Person A was a businessman well known for experience and expertise in this area. Mr. English ultimately provided Person A with a draft committee report regarding cesspools that Mr. English was a member of. This draft was not available to the general public, although dissemination of draft reports by working committee members to those with subject matter expertise for comment is a common practice. Ultimately no comments made by Person A were submitted by Mr. English on this draft report.

Shortly later, Mr. English requested help from Person A in obtaining hotel rooms in Las Vegas and in hosting a family dinner gathering in Hawaii. Person A provided these financial benefits to Mr. English.

At the start of the 2020 legislative session, Mr. English submitted a Bill that

13

would make funds available to test technologies for waste management solutions through a pilot project. This Bill would benefit Person A business interests. Shortly later, and without solicitation, Person A gave Mr. English cash to thank him for introducing the pilot project Bill.

In March of 2020, days before the Legislature closed due to the Covid-19 pandemic and all proposed legislation died, Person A asked to meet Mr. English. At their meeting, Person A, without solicitation, gave Mr. English an envelope containing $10,000 and requested him to delay the bill until next session. Mr. English agreed. Ultimately, no official action was taken by Mr. English and all pending legislation was deferred until next year upon the closure of the 2020 legislative session due to the pandemic.

In January of 2021, Mr. English again met at Person A's request in Honolulu. Person A again thanked Mr. English for his support and then, again unsolicited, gave Mr. English an envelope containing $5000. Mr. English accepted the envelope.

Ultimately, Mr. English accepted $18,350.00 from Person A from 2019 to 2021. No gift or benefit was disclosed on Mr. English's annual gift disclosure form.

Mr. English was arrested on January 14, 2021, by the FBI. Upon his arrest, and without the benefit of counsel or bargain, Mr. English gave a voluntary

statement admitting his conduct and expressing remorse. Formal acceptance of responsibility came in February of 2022, when Mr. English entered into a formal plea agreement with the government and plead guilty to Honest Services Wire Fraud.

The specific facts of this case certainly justify some amount of incarceration. However, courts have found that even in serious cases, there is considerable evidence that relatively short sentences can have a strong impact on white collar offenders. U.S. v. Adelson 441 F.Supp.2d 506 (SDNY 2006)(in securities fraud case, where guidelines call for life, court imposes 42 months in part because "there is a considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders.")[citing Richard Frase, Punishment Purposes, 58 Stanford L. Rev. 67, 80 (2005); Elizabeth Szockyj, Imprisoning White Collar Criminals?, 23 S. Ill. U. L.J. 485, 492 (1998); United States Sentencing Commission, Fifteen Years of Guidelines Sentencing 56 (2004) (noting that the Sentencing Guidelines were written, in part, to "ensure a short but definite period of confinement for a larger proportion of these 'white collar' cases, both to ensure proportionate punishment and to achieve deterrence"

    C.    **Just Punishment – 18 U.S.C. 3553(a)(2)(A)**

The Defense recognizes that a period of incarceration is warranted and necessary in this case. The Federal Sentencing Guidelines recommend 37-46

15

months of incarceration and U.S. Probation is recommending 37 months (See #14 page 28).

In this matter, Mr. English immediately confessed to his conduct when confronted by law enforcement. He then obtained counsel and immediately set up a meeting with the responsible U.S. Attorneys, and there more fully and completely admitted his conduct and answered questions about the same to the best of his ability. Prior to the bringing of the formal charge, Mr. English resigned his role as an elected representative, and retired from public life.

After entering into a plea agreement with the government, Mr. English then waited until the government chose to move forward with bringing this offense. On February 15, 2022, Mr. English waived his right to indictment and entered a plea of guilty to the charge.

Since he was first confronted with his conduct, Mr. English has tried to handle this matter in honest and responsible fashion. Like any defendant in a criminal proceeding, Mr. English has control over only one thing, his conduct from the day the offense is revealed through the formal resolution of the case. In this matter, Mr. English has responded as well as any defendant could. He has been open and truthful about his offense and sought to take formal responsibility for his actions. He has cooperated with law enforcement, the U.S. Attorneys, U.S. Pretrial Services for supervision, and U.S. Probation in the preparation of the presentence

report.

The defense submits that a minor downward variance from the 37 months recommended by the presentence report to 30 months would provide a just and sufficient punishment while recognizing the seriousness of this offense.

### D. Adequate Deterrence – 18 U.S.C. 3553(a)(2)(B)

Mr. English fully retired from public service on April 30, 2021. His prosecution has been one fully covered by all media outlets. He will never again hold public office, nor seek employment with any governmental agency or organization. Specific deterrence has been achieved. The possibility of Mr. English committing another similar offense does not exist.

The idea of general deterrence is more complicated in this case. Mr. English's conduct and prosecution is known by every single elected official in the State. Others with authority and power in our community have seen an experienced and well-respected public servant, with a long and honorable career of service under his belt, fall from grace. Punishment will assist in general deterrence, but we respectfully submit that the main form of general deterrence comes from the public shame and humiliation associated with the betrayal of the public trust. Incarceration is appropriate in this case, but the need for an overly long period to impact general deterrence is mitigated by the very public condemnation of Mr. English by the community.

17

The ruin of reputation can form the basis for a downward variance. U.S. v. Adelson, 441 F.Supp. 2nd 506 (SDNY 2006) (In securities fraud where guidelines called for life, court imposes 42 months noting that factor of specific deterrence accounted for because "With his reputation ruined by his conviction, it was extremely unlikely that he would ever involve himself in future misconduct.").

### E. Protection of the Public - 18 U.S.C. 3553(a)(2)(C)

Mr. English fully retired from public service on April 30, 2021. He currently holds no positions of authority or responsibility with any municipal, state, or federal entity. Since the events of this case, he has resided and kept to his home on Maui. He has cooperated with the government since March of 2021 and has been under supervision since February of 2022. Mr. English presents no threat of any kind to the public. This lack of threat to the public by the defendant can form the basis for a downward variance. U.S. v. Edwards, 595 F.3rd 1004 (9th Cir. 2010).

### F. Restitution – 18 U.S.C. 3553(a)(7)

No restitution is due in this case. However, Mr. English has paid the forfeiture due in this case in full and well before his sentencing in this matter.[4]

---

[4] The Government and the State may be reaching a further agreement in this matter as a mathematical error exists in the Memorandum of Plea Agreement (See Document #14 at Page 23).

### G. The Need to Avoid Unwarranted Disparities – 18 U.S.C. §3553(a)(6)

§ 3553(a)(6) requires a sentencing judge to consider the need to avoid unwarranted sentencing disparities among similarly situated defendants. There is another publicly elected official caught up in impropriety associated with Person A and his work with the government to mitigate his own public corruption matters. However, his sentencing has been continued to a date later this sentencing.

### VII. CONCLUSION

The Defense respectfully submits that justice in this matter would be served with an incarceration sentence of 30 months and the other guideline recommendations made by U.S. Probation.

DATED at Honolulu, Hawaii, June 27, 2022.

/s/ Richard H. S. Sing
RICHARD H.S. SING
Attorney for Defendant
JAMIE KALANI ENGLISH