CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
MICAH SMITH
MICHAEL F. ALBANESE #9421
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  Ken.Sorenson@usdoj.gov
        Micah.Smith@usdoj.gov
        Michael.Albanese@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 22-00012 SOM |
|---|---|---|
| Plaintiff, | ) | UNITED STATES' SENTENCING MEMORANDUM;CERTIFICATE OF SERVICE |
| vs. | ) | |
| JAMIE KALANI ENGLISH, | ) | |
| Defendant. | ) | |

UNITED STATES' SENTENCING MEMORANDUM

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................i

I.   The United States Sentencing Guidelines ......................................................2

II.  The Offense Conduct and Section 3553(a) Sentencing Factors......................2

     A.   Nature and Circumstances of the Offense..............................................2

          i.    English's Position as Senate Majority Leader ............................3

          ii.   English's Conduct was not an Aberration ..................................4

          iii.  False Public Financial Disclosures .............................................7

     B.   Mitigation ...............................................................................................8

     C.   Sentencing Recommendation...............................................................10

III. The Forfeiture ...............................................................................................11

IV.  Conclusion ...................................................................................................12

## TABLE OF AUTHORITIES

Cases                                                                                                                Page(s)

*United States v. Vrdolyak*, 593 F.3d 676 (7th Cir. 2010) ..................................... 8-9

Statutes

Section 3553(a) ................................................................................................ 2

Section 3553(a)(1) ........................................................................................... 2

i

## UNITED STATES' SENTENCING MEMORANDUM

Kalani English (English) sold the power of his position as Majority Leader of the Hawaii State Senate and betrayed his oath as an elected representative of the people of Hawaii.  English chose to advance his personal financial interests above the welfare of the public he served, and to conceal his acceptance of bribes and other financial benefits by brazenly falsifying Hawaii State Ethics financial disclosure forms.  In filing false financial disclosure forms, English robbed the public of their right to know of financial benefits he was receiving from third parties that would influence the exercise of his legislative judgment and discretion.  In doing so he defrauded the very people he was elected to serve.  English demonstrated that he was not only willing to introduce legislation to advance the cause of those who would bribe him, but he was also willing to use his political clout as the Majority Leader of the State Senate to "kill" pending legislation for a $10,000 payment.  English's offense conduct mandates a sentence that serves to punish his egregious conduct, and serves as lasting and credible deterrence for other public officials who contemplate violating their sacred duty to honestly and ethically represent their constituents.  The sentence must promote a firm respect for the law, and deliver the stern and lasting message that corruption of our elected officials will punished to the full measure of the law.

//

V.      The United States Sentencing Guidelines

Neither the defense nor the government raised any objections to the PSR's sentencing guideline calculation. As provided in paragraph 85 of the PSR, the total offense level is 21 and the guideline range is 37 to 46 months. The United States will advocate for a sentence within the above guideline range.

VI.     The Offense Conduct and Section 3553(a) Sentencing Factors

Title 18, United States Code, Section 3553(a) requires the court to impose a sentence sufficient, but not greater than necessary, to comply with the following purposes: reflect the seriousness of the offense, promote respect for the law, provide just punishment for offense and afford adequate deterrence to criminal conduct. While Section 3553(a) also requires the court's sentence to protect the public from further crimes of the defendant, we do not believe that English presents any serious risk of re-offending since it is unlikely he will again hold public office.

A.      Nature and Circumstances of the Offense

Section 3553(a)(1) mandates that the court consider the nature and circumstances of the offense, and the history and characteristics of the defendant. The offense conduct in this case is deeply disturbing and spanned several years. As indicated, English peddled the power and influence of his position as a Hawaii

State Senator and Majority Leader to enrich himself and betray the trust bestowed upon him by those he was elected to serve.

English was first elected to the Hawaii State Senate, representing the 7th Senatorial District, in November 2000. The stipulated facts demonstrate that within the last several years English improperly accepted several thousand dollars from Person A in return for his support of legislation that benefitted Person A's company. Then, beginning in 2019, English began to solicit and accept multiple bribe payments from Person A. Unknown to English, Person A was by that point working as a confidential informant for the FBI.

      i.    English's Position as Senate Majority Leader

English's position as Senate Majority Leader is an aggravating sentencing factor. Elected public officials are critical and important community leaders. The public naturally and by necessity turns to them for competent, honest representation. When the elected representative is the Majority Leader of the State Senate, a powerful and influential position, there is a palpably deeper and more resonate duty of fidelity to the public. The public's expectation is that the Majority Leader of the State Senate would abide by his oath of office, conduct himself honestly and above reproach, and render selfless service to the people of Hawaii. When the public learns, as it has in this case, that the Senate Majority leader was lining his pockets with the cash of shadowy special interests, peddling legislative

favors in return—and then lying about it on his public financial disclosure forms—there is a an even greater collapse in the public's morale and confidence in their elected officials. After all, if the leaders of the State Senate are selling out to private interests, than perhaps others are as well.

In the wake of the charges in this case there was an extraordinary public outcry. The legislature of the State of Hawaii has since taken a hard look at itself, how it conducts its affairs, how and when fund raising occurs, and how representatives are educated regarding the ethical discharge of their public duties. English, as a prominent leader in the State Senate, shoulders substantial responsibility for a rising crisis in confidence in our public officials. English abused the power of his lofty official position by using it to serve his personal interests and greed rather than serve the people of Hawaii. We submit this is an aggravating factor the Court must consider in fashioning a sentence in this case.

    ii.    <u>English's Conduct was not an Aberration</u>

All of the bribes paid in this case were accomplished with the services of Person A, who was acting on behalf of federal law enforcement authorities. The FBI was, using the services of Person A, able to seamlessly bribe English. English was never reticent about taking money in return for political and legislative favors. As the investigation progressed it became astoundingly clear that no matter the legislative ask, the answer from English would most certainly be "yes." English's

behavior signaled that it was systematically normal for him to accept, and indeed expect, financial benefits in return for legislative favors. In fact, it would have been an aberration for English to decline to accept a cash bribe. It was English who unwittingly initiated the FBI covert relationship with him by reaching out to Person A with a demand for hotel rooms in Las Vegas for English and some of his friends. That turned out to cost around $1,800, which amount English happily accepted. English later agreed to send a private draft report on cesspools, not available to the public, to Person A. A few days later English asked for Person A to take him, and some visiting family members, to dinner. Person A declined the offer of attending the dinner, but gave English what he really wanted: $500 in cash to pay for the dinner. English readily accepted the funds mentioning to Person A how much everyone "loved the crab."

On February 24, 2020, during a dinner meeting in Honolulu, Person A gave English $1,000 for his assistance with the cesspool legislation, which English accepted without reservation. During the dinner meeting English told Person A that he should "should formulate what you would like to see" in the bill. English later told him "you don't have to think about the language (in the bill), just think about the outcomes, I'll, I'll deal with the language." The outcome, we submit, would be for Person A's company to financially benefit from the proposed

cesspool legislation. When the dinner check came, Person A, as English expected, picked up the $592 tab.

Arguably more disturbing is what occurred on March 11, 2020, when Person A asked English to delay the cesspool legislation to the next session. The following is a telling excerpt of that recorded conversation:

> Person A: I need to, um, delay that bill like until the next session. Because then I know like you—you're the one that submitted it so— and I don't know how complex this is and I want to—want to—
>
> ENGLISH: Well it's easy to kill bills. It's hard to pass them.
>
> Person A: I need both of those kind of like . . . .
>
> ENGLISH: You need both of them killed?
>
> Person A: Yeah, yeah.
>
> ENGLISH: Okay.
>
> Person A: Is that? I mean—I mean—you know, I don't know how that's done.
>
> ENGLISH: **It's easy to kill bills . . . . This one I can—I can make sure it doesn't move in the money committees. The one that's on the House side, um, you know let me just see where it is and I can see it, I can just tell the Chairs, hold off.** [State Representative 2] is going to be pushing for that bill. [Emphasis Added]

In this instance, English agreed to take steps to "kill" pending legislation at the mere request of Person A. He readily took the sum of $10,000 to underwrite his promise, and effectively sold the power and prestige of his position to serve the perceived needs of Person A.

6

Finally, on the day of his arrest, English was paid $5,000 by Person A in a motor vehicle. English readily accepted the cash by stuffing it in his pocket and saying "thank you." When investigators performed a traffic stop on Person A's vehicle a few moments later, English pulled out the envelope with the cash and tried to hide it under the passenger side floor mat. While English did opt to be cooperative with investigators that evening, it is noteworthy that English had been nabbed with his hand deep in the cookie jar, and his decision to cooperate was both expected and obvious.

### iii. False Public Financial Disclosures

The State of Hawaii mandates that its elected officials file an annual public financial disclosure informing the public and their electorate of any gifts or financial benefits in excess of $200 conferred upon them. In his June 30, 2020 gift disclosure, English knowingly and purposefully failed to declare the receipt of nearly $15,000 in funds and financial benefits conferred upon him by Person A, including the hotel rooms provided to him in June 2019 at a cost of $1,805, the $500 in cash provided to him in June 2019, the $1,000 in cash provided to him in February 2020, or the $10,000 in cash provided to him in March 2020.

At the same time, English disclosed small gifts he received from legitimate sources during that same time period, including, among other things, gifts of $7 worth of trail mix from a private company, $10 worth of chili pepper water from

the County of Kauai, a $20 goody and snack bag from the Maui County Council, and a $22 grocery bag of vegetables from a law firm.  English also disclosed travel and hotel stipends that he received from legitimate sources, including a $200 hotel stipend from the National Conference of State Legislatures.

By failing to lawfully disclose payments and benefits that he accepted for agreeing to perform official acts on his annual gift disclosure form, English purposefully concealed corrupting influences on his performance as a State Senator, and defrauded the citizens of Hawaii, who were entitled to English's honest and faithful services and entitled to know what gifts English had received during the course of his employment.  We submit that English's brazen falsification of mandated State of Hawaii Financial Disclosure forms is an aggravating factor that must weigh into the Court's sentence in this case.

  B. <u>Mitigation</u>

In mitigation, English served in the Hawaii State Senate for over 20 years, rising to the position of Senate Majority Leader.  Based on letters English has submitted to the Court, he is well regarded by many.  At the same time, while the government does not doubt the sincerity of these supporters, it notes that English has had a significant and lengthy career as a politician.  He was therefore, quite literally, in the business of making friends.  *United States v. Vrdolyak*, 593 F.3d 676, 683 (7th Cir. 2010) ("Politicians are in the business of dispensing favors; and

8

while gratitude like charity is a virtue, expressions of gratitude by beneficiaries of politicians' largesse should not weigh in sentencing.").

English was cooperative following his arrest. He aided agents in the conduct of their investigative duties, and met with government counsel and agents investigating corruption. Although English failed to provide either the quantum or quality of assistance sufficient to warrant a downward departure, he did agree to be interviewed following his arrest, and in subsequent protected proffer sessions. English did accept full responsibility for his actions.

English resigned from the Senate a few months after the covert operation that resulted in his arrest. Because English was cooperative, the government had moved to dismiss his pending criminal complaint in order to continue its investigation. Within a few months English appeared on the Senate steps before a full media contingent, and blamed "long Covid" as the reason he was leaving public service. In truth, English was leaving public service because he had been busted in a highly sensitive ongoing corruption investigation for taking bribes and betraying his oath of service to the people of Hawaii.

We have taken his cooperation and acceptance into account in formulating a balanced sentencing recommendation to the Court that addresses the above mitigators, and the factors in aggravation.

//

9

C.     Sentencing Recommendation

As noted above, English's sentencing guideline range is 37 to 46 months. The government recommends a sentence of 42 months. While the guidelines calculation in this case relies heavily upon the dollar amount of the funds involved in the various bribes, we think a more telling metric is the number of bribe events, the ready ease with which regularly English accepted cash for political favors and the depth he demonstrated he would go to serve what he believed to be the legislative demands of a corrupt businessman. Without English's cooperation and acceptance of guilt, we would be asking the Court for a substantial upward departure from the guideline range. Instead, we recommend a sentence that seeks to balance the compelling need for the sentence to convey a message of deterrence while balancing the mitigating factors addressed herein, and also by English's counsel in his well-crafted sentencing memorandum.

It has been, by our recollection, more than two decades since an elected public official in Hawaii has faced a Hawaii United States District Court judge for sentencing in a corruption case. Corruption cases against elected officials are exceedingly rare because they are so difficult to investigate, prosecute and obtain sustained convictions. For these reasons, it is critical that the sentence in this case ensures meaningful *general deterrence*. This is particularly true in the current political climate, where waves of dark money infect politics and flood the worlds

10

of our elected officials.  The Court's sentence, we submit, must provide a credible deterrence effect, and *promote respect* for not only federal law, but state laws, such as those mandating truthful financial disclosures by public officials.  We ask the Court to recognize the unique opportunity this case presents and deliver the message that those who chose to abuse their elected power to enrich themselves at the expense of the people they serve will face severe penalties that include a lengthy term of imprisonment and appropriately, a financial penalty as well.

      We concur with the recommendation of U.S. Probation that the defendant also pay a fine in the amount of $100,000.  The sentence of a fine, particularly in this case, addresses the underlying greed incumbent in English's offense conduct.  It is troubling that English had substantial assets and income and yet chose to blithely sell the power of his elected office for so little.  English has the ready ability to pay a fine, and the amount of $100,000, when coupled with a substantial term of imprisonment sends an appropriate and credible message of deterrence.

VII.   <u>The Forfeiture</u>

      As detailed in the PSR, English took a total of $18,305 in bribe payments, but a $5,000 bribe was immediately recovered.  He should forfeit $13,305 in ill-gotten gains and, to that end, the government has submitted an amended order of forfeiture requiring the forfeiture of that amount.  We note that due to clerical error, an earlier order of forfeiture included an amount of $15,305, and English

11

made payment on that larger amount. For that reason, the amended order of forfeiture provides that the $2,000 overpayment should be returned to English.

VIII. Conclusion

For the above reasons, the government respectfully requests that the Court impose a sentence of 42 months' imprisonment, together with a $100,000 fine and an amended forfeiture order of $13,305.

DATED: July 1, 2022, at Honolulu, Hawaii.

> CLARE E. CONNORS
> United States Attorney
> District of Hawaii
>
> By  */s/ Kenneth M. Sorenson*
> KENNETH M. SORENSON
> MICAH SMITH
> MICHAEL F. ALBANESE
> Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date noted below, the true and correct copy of the foregoing was served electronically through CM/ECF:

Served Electronically through CM/ECF:

Richard H.S. Sing, Esq.
Attorney for Defendant
JAMIE KALANI ENGLISH

DATED: July 1, 2022, at Honolulu, Hawaii.

*/s/ Kenneth M. Sorenson*
_____
KENNETH M. SORENSON
Assistant U.S. Attorney